**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Case No.

| | |
|---|---|
| **CY CUSHENBERRY**, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| **v.** | ) |
| | ) |
| **CITY OF MANITOU SPRINGS,** a | ) |
| Colorado municipal corporation, | ) |
| | ) |
| Defendant. | ) |

---

## COMPLAINT AND JURY DEMAND

---

Plaintiff, Cy Cushenberry, by and through the undersigned counsel from the Sawaya & Miller Law Firm, brings this Complaint against the Defendant, the City of Manitou Springs, a Colorado municipal corporation, for payment of unpaid overtime to which he is entitled under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201, et seq. ("FLSA"), including the Portal-to-Portal Act, 29 U.S.C. § 255. As his Complaint the Plaintiff states and alleges as follows:

## INTRODUCTION

1.      The Plaintiff, Cy Cushenberry ("Cushenberry" or "Plaintiff") worked for the Defendant City of Manitou Springs ("Manitou Springs" or "the City") as its only Code Enforcement Officer from approximately July 2017 to August 2020.

2.      He was employed as a non-exempt hourly worker under the FLSA.

3.      As described within, Cushenberry regularly had to work over 40 hours per week to accomplish the enforcement tasks he was instructed to perform and which were part of his job. However, he was rarely, if ever, paid for all of the overtime compensation he earned. Instead, he was told by his supervisors to perform the work necessary to complete his duties but was instructed not to put in for all the overtime he actually worked. Cushenberry was therefore placed in the impossible position of having to work overtime but not report it all and not get it all paid. This situation became so untenable that he eventually resigned in August 2020.

## I.      JURISDICTION AND VENUE

4.      This case arises under the laws of the United States.

5.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332, because Plaintiff's claims arise under the Fair Labor Standards Act as alleged herein.

6.      Venue in this Court is proper under 28 U.S.C. § 1391 in that Manitou Springs, the Defendant herein, is a municipality organized under the laws of the state of

Colorado and located within El Paso County, Colorado, and the events giving rise to the

FLSA claims alleged herein occurred in El Paso County, Colorado.

## II.      **PARTIES**

7.      Plaintiff Cushenberry is over the age of eighteen (18) and a resident of El

Paso County, Colorado. Cushenberry's address for service and mailing in this case is

through Plaintiff's counsel's office at 1600 Ogden Street, Denver, Colorado 80218.

8.       Manitou Springs is a municipal corporation located within El Paso County,

Colorado and organized under the laws of the State of Colorado, with principal offices at

606 Manitou Avenue, Manitou Springs, CO 80829.

9.      Manitou Springs was Cushenberry's "employer" under the FLSA during

the relevant times described in this Complaint, and the City was during that time period

subject to the requirements of that law.

10.     Cushenberry was employed as a Code Enforcement Officer in Manitou

Springs, initially supervised out of the City's Planning Office but later supervised out of

the City's Police Department.

11.     Cushenberry was properly classified by Defendant as a non-exempt, hourly

worker entitled to overtime compensation for work over 40 hours per work week which

was required to be paid at 1.5 times his regular hourly rate. Cushenberry's regular hourly

rate was at or approximately $29.05 per hour at the end of his employment period.

### III.   <u>GENERAL ALLEGATIONS AND CLAIM FOR UNPAID OVERTIME</u>

12.     Throughout his employment, Cushenberry regularly worked over 40 hours per week and sometimes in excess of 80 hours per week for the Defendant.

13.     Throughout the period relevant to this Complaint, Manitou did not pay Cushenberry overtime compensation at a rate of one and one-half times his regular rate of pay for all of the hours that he worked over 40 per week.

14.     Cushenberry alleges that Defendant willfully violated the FLSA in that its actions in not paying the Plaintiff for his overtime work were in direct and clear violation of controlling federal law and the City's own policies concerning overtime and compensatory time policies, practices and procedures, and that Defendant knew or had reason to know that such overtime work was being performed but not being paid.

15.     Since becoming employed by the City as its sole Enforcement Officer Cushenberry served under seven City Administrators (or Interim/Acting Administrators) during that three year period, and reported to a total of eleven City employees who served as his de facto supervisors.

16.     From the start of his employment in 2017 he was told by his first boss, Wade Burkholder, the Planning Director for the City who was involved with Plaintiff's hiring by the City (when Cushenberry reported to the Planning Department) that Cushenberry was to be on call 24 hours a day, 7 days a week, and had to make himself

available to residents and business owners when contacted if they were in need of assistance.

17.     When Chief Joe Ribeiro became the Interim City Administrator he acknowledged to Cushenberry that previous Code Enforcement Officers quit or ceased employment because of the unusually large caseload they were subject, but nonetheless, Chief Ribeiro told Cushenberry that no additional help would ever be given to him in his position.

18.     After Mayor Ken Jaray was elected Mayor of the City in the 2017 election, he employed an Interim City Administrator named Malcolm Fleming and the City also hired an outside firm to work with the City's Planning Department, essentially giving Cushenberry three supervisors, each with his or its own agenda.

19.     Cushenberry discussed his 80 hour per week case load with his then supervisor Mike Davenport (one of two Interim Planning Directors). Mr. Davenport told Cushenberry that while the City could not afford to pay for all such overtime he should put down only a few hours of it on his timesheets so as not to alert the City about the large extent of his overtime work.

20.     Mr. Davenport also said that he would speak with Malcom Fleming about Cushenberry's work load. Mr. Fleming had become the Interim City Administrator in the beginning quarter of 2018.

21.     Mr. Fleming did meet with Cushenberry and Cushenberry to discuss his need to work overtime and Mr. Fleming suggested to Cushenberry to try to triage his work.

22.     When Cushenberry attempted to triage his work to try to limit his work hours he was unable to respond to requests for service, and members of the City Council, the Mayor and administration began chastising him.

23.     Instead of hiring additional help the City assigned Cushenberry additional duties, for example, requiring him to enforce the City's "mask ordinance" requiring the wearing of masks by members of the public within Manitou Springs in certain circumstances because of the public health emergency under COVID-19. These additional duties required Cushenberry to work even more hours each week than he had previously worked.

24.     This additional assignment was made to Cushenberry even though he was not a uniformed law enforcement officer, had been supervised under the Planning Department and not under the Police Department for the vast majority of his service, was unarmed, and was not provided bulletproof protective equipment even though the assignment of such duties was known to have resulted in assaults on those trying to enforce such ordinances.

25.     In or around May 2020 Cushenberry was in a discussion with new Planning Director of the City, Christine Lowenberg who had been hired for the job in or around

February 2020. During that conversation, as he had stated before to supervisory staff, he stated that he spent many hours of overtime each week that was not reported on his timesheet.

26.     Denise Howell who had become the new Mayor of the City in or around the fall of 2019 was given that information concerning Cushenberry's working of unpaid overtime, and she launched an investigation around June 2019.

27.     The documents cited herein were obtained by a Colorado Open Records Act Request made by the Plaintiff in the fall of 2020 and provided by the City.

28.     The City's investigation showed that Cushenberry was regarded by supervisors as an honest person (see, e.g., statement of Kim Johnson, Planning Director for the City who stated during the investigation, "Cy is an honest person. If he said he worked it, he's telling the truth." COMS_001669. See Attachment 1).

29.     Documents generated during the investigation showed that City Administrator Howell was ill-informed and wrong about the requirement to pay overtime to City non-exempt employees. In reference to the information that Cushenberry was working unpaid overtime she stated, "It is great we have employees that are so much [sic] that they are willing *to donate time*." (Emphasis added). COMS_001258. *Id.* in Attachment 1). Such a comment demonstrates a reckless misapprehension of the requirements of the FLSA and the City's responsibility to pay for all time worked by its employees.

30.     In an email to Deanna Heyn, the Director of Human Resouces ("HR")
during the investigation, City Administrator Howell replied to Ms. Heyn's statement
concerning Cushenberry that, "This is definitely a situation which can bring significant
liability to the City…," and stated, "I [City Administrator Howell] would ask regarding
back pay for any overtime that was not put on the timesheet. *I don't know the rules
regarding this.*" COMS_001249-50. (Emphasis added). *Id.* in Attachment 1.

31.     After its investigation, and contrary to the facts found therein, the City
decided not to pay Cushenberry for any of his unpaid overtime.

32.     During its investigation Cushenberry was asked by the City to provide a list
of hours of overtime he was not paid from January 1, 2019 through May 2020 ("OT
List"). Those hours totaled a minimum of some 665 hours and account for approximately
17 months of service during the listed timeframe. COMS_001596. Attachment 1.

33.     Cushenberry's claim for unpaid overtime, however, goes back to three
years before the filing of this Complaint, or until approximately February 1, 2018 and
runs through the period set out on the OT List.

34.     Utilizing the information set out in the OT List as an exemplar for the
overtime worked worked by Plaintiff but which was not paid from on or about February
1,  2017 until January 1, 2019, which the Cushenberry states represents at a minimum the
amount of unpaid overtime he worked, shows Plaintiff's minimum unpaid overtime of an

additional 578.5 overtime hours for a minimum of unpaid overtime totaling approximately 1,243 hours.

35.     Plaintiff's ending regular pay rate of $29.05 equates to an overtime hourly rate of $43.58.

36.     Subject to confirmation by examination of relevant electronic communications and telephone records as well as other documentation which should be available in the course of litigation, and which except for data already supplied to the City by Cushenberry is in the control of the Defendant, Cushenberry is owed a minimum of 1,243 hours of overtime at $43.58 per hour, or $54,169.94, plus liquidated damages in that same amount for a minimum total due of $108,339.88, plus his reasonable attorney's fees and costs of litigation.

37.     The City has always had access to this information so if it had ever questioned the multiple times that Cushenberry complained that he was having to work overtime and could not do his job in 40 hours a week the City could simply look at its own telephone and email records for Cushenberry. As the City's HR Department said during its investigation of Cushenberry's overtime claims:

> In an effort to further validate the overtime hours, the HR department have since been provided [*sic*] with official email and phone records of Cy. Upon an initial brief screening of these records to we have determined that an extensive amount of time will need to be spent, approximately 3-4 days for the two person HR Team, in order to properly be able to validate the dates and amount of time spent after hour in an official capacity. At this time we feel that the current requested over time hours is, validated, sufficient and accurate, and that further investigation into the phone and

email records could possibly result in a significant increase in verified overtime hours, potentially costing the city substantially more than what is currently being requested by the employee.

HR email of September 23, 2020 from Crystal Newman to Deanna Heyn.

COMS_001647. Attachment 1.

38.     The City's failure to pay Cushenberry for overtime was not the first time the City had engaged in such conduct. The City previously had failed to pay its pool staff overtime and ultimately went back 3 years and paid them overtime for that period.

COMS_001249. Attachment 1.

39.     In this case the City's failure to pay for all hours of overtime worked by the Plaintiff was willful in part because the City's supervisory staff knew of the fact that such overtime hours were being worked and not paid for. As Michelle Anthony, a senior planner with the City who had authority to review and approve or disapprove Plaintiff's timesheets stated during the investigation:

> I know that Cy, like many of us, has worked at times and accrued hours he hasn't put on his timesheets. When I was hourly, I regularly ended up doing this. You have to get the work done and the time involved (even when you are allowed some OT) can get to be too much to put down. It's more stressful to deal with being told not to work OT, but then having expectations go unmet and trying to deal with that. So you do what you have to in order get the job done. . . . I know Cy has come into the office over the weekend, early in the morning, or some evenings because there is an issue he's responding to. Especially with Code Enforcement there are issues that come up that you need to take care of quickly, otherwise there is a larger mess to deal with or neighbors get more because "the City isn't doing anything." I don't believe Cy has come into the office outside of regular hours to socialize – there either wasn't anyone else here to visit

with and if one of us was here, then we were busy as well working on
something that had to get done.
. . .
I would have signed off on timesheets when the Planning Director was
unavailable or when we were between Directors. . . . I didn't question
whether there was time not accounted for on the timesheets – I focused on
what was reported . . .. I imagine there were times hours were unreported. I
knew this happened and understood why . . ..

Email from Michelle Anthony to Sarah Borkowski, July 2, 2020. COMS_001356-
57. Attachment 1.

## IV.  **PRAYER FOR RELIEF**

WHEREFORE, the Plaintiff respectfully asks the Court to find in his favor

and to award to the Plaintiff:

A.     An Order providing for all improperly denied overtime compensation to be

paid to the Plaintiff along with liquidated damages in an equal amount;

B.     An Order providing that the City's behavior in failing to pay the Plaintiff

all of the overtime compensation to which he was due was willful and that the FLSA's 3

year statute of limitations applies to Plaintiff's claims;

C.     An Order that Defendant pay Plaintiff's reasonable attorney's fees and

costs; and

D.     All other and further relief as the Court may find to be equitable and just.

## VI. **JURY DEMAND**

The Plaintiff demands a jury on all issues so triable.

Respectfully submitted,

*/s/ David H. Miller*

_____

David H. Miller
Adam Harrison
SAWAYA & MILLER
1600 Ogden Street
Denver, Colorado 80218
Telephone: 303.839.1650
E-mail: dhmiller@sawayalaw.com

*Counsel for the Plaintiff Cy Cushenberry*

13